UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GINGER JAMES, ) | |
| ) | |
| Plaintiff, ) | Case No. 09-CV-0456-CVE-FHM |
| ) | **BASE FILE** |
| DEBORAH TENNISON and ) | |
| ) | Consolidated with |
| ) | Case No. 09-CV-0457-CVE-FHM |
| Consolidated Plaintiff, ) | |
| v. ) | |
| ) | |
| INDEPENDENT SCHOOL DISTRICT NO. ) | |
| I-050 OF OSAGE COUNTY a/k/a Prue Public ) | |
| Schools, RON MEADOWS in his individual ) | |
| and official capacity, GERALD JACKSON in ) | |
| his individual and official capacity, VALERIE ) | |
| TRASTER in her individual and official ) | |
| capacity, and SYLVIA HENDRICKS in her ) | |
| individual and official capacity, ) | |
| ) | |
| Defendants, ) | |

## OPINION AND ORDER

Now before the Court is defendants' Motion to Strike Inadmissible Evidence and Improper Argument in Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. # 57). Plaintiffs Ginger James and Deborah Tennison (together, plaintiffs),[1] former employees of Independent School District No. I-050, Osage County, Oklahoma (the School District or the District), bring the following claims against the District and individual members (or former members) of the District Board of Education (the Board of Education or the Board): claims under 42 U.S.C. § 1983 for violation of their substantive and procedural due process rights and free speech rights; and state law claims for breach of employment contract, intentional interference with their

---

[1]   James's and Tennison's cases were consolidated for discovery and trial. Dkt. # 17.

employment contracts, and conspiracy to interfere with their employment contracts and violate their due process and free speech rights. Dkt. # 2. Defendants seek summary judgment on all claims. Dkt. # 40.

## I.

James is the former District elementary school principal. Tennison is the former District high school principal. The individual defendants, Ron Meadows, Gerald Jackson, Valerie Traster, and Sylvia Hendrix,[2] were members of the Board of Education during times relevant to this matter.

These suits are two of four brought by former employees of the School District against the defendants herein. Dawn Bunch, the former School District Treasurer and Activity Fund Treasurer, brought claims similar to James's and Tennison's. Louanne Cypert, the former high school secretary, brought § 1983 due process and retaliation claims, gender and age discrimination claims, and state law claims for breach of contract, interference with contract, and conspiracy. On August 23, 2010, the Court entered summary judgment in defendants' favor on Bunch's federal law claims and dismissed Bunch's state law claims for lack of subject matter jurisdiction. Case No. 09-CV-0458-CVE-FHM, Dkt. # 54. On August 31, 2010, the Court entered summary judgment in defendants' favor on Cypert's federal law claims and dismissed Cypert's state law claims for lack of subject matter jurisdiction. Case No. 09-CV-0803-CVE-FHM, Dkt. # 42.

## II.

Defendants argue that certain evidence submitted in support of Plaintiffs, Ginger James and Deborah Tennison, Response in Opposition to Defendants' Motion for Summary Judgment (Dkt.

---

[2]   Hendrix's name was mis-spelled in the Complaints.

# 52) is inadmissible and should not be considered by the Court in ruling on defendants' motion for summary judgment. This evidence is:

- E-mail from former District superintendent Joe Hulsey to Brian Drummond, dated February 21, 2008 (Dkt. # 52-5);

- E-mail from Hendrix to Meadows, dated April 1, 2008 (Dkt. # 52-7);

- E-mails among Phyllis Tarrant, Hendrix, and Meadows, dated June 30 and July 2, 2008 (Dkt. # 52-10);

- E-mail from Hendrix to Meadows, dated September 3, 2008 (Dkt. # 52-13);

- E-mail from Hendrix to Meadows, dated December 8, 2008 (Dkt. # 52-23);

- Tennison's testimony that Meadows told then-superintendent, Randy Cottrell, that "if we'd back off his son, he'd be easier to get along with" (Dkt. # 52-12, at 4);[3]

- The Rule 26 Expert Report and Supplement of plaintiffs' expert witness, Bill Bentley.[4] Dkt. # 52-27.

It is well-settled law in the Tenth Circuit that a court may consider only admissible evidence in ruling on a motion for summary judgment. Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998). Inadmissible hearsay testimony submitted in depositions may not be

---

[3] Defendants moved to strike statements (allegedly in Exhibit 10 to plaintiffs' response) made by Cottrell to Cypert regarding the criminal investigation into Meadows's son. Dkt. # 57, at 3. Exhibit 10 does not contain any testimony by Cypert regarding statements to her by Cottrell.

[4] The defendants have also filed Defendants' Motion in Limine Regarding Anticipated Testimony of Plaintiff's Expert Witness Bill Bentley and Opening Brief in Support (Dkt. # 48), which is not at issue here.

considered in a summary judgment ruling. Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995).

> The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but 'the content or substance of the evidence must be admissible.' Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'

Adams v. Amer. Guar. and Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting Wright-Simmons, 155 F.3d at 1268)).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement is not hearsay if:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement that the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

Fed. R. Evid. 801(d)(2).

A.   February 1, 2008 E-Mail from Hulsey to Drummond

At the time this e-mail was sent, Hulsey was the superintendent of the School District. Dkt. # 59, at 2. The e-mail is to Bryan Drummond, an attorney at Rosenstein, Fist & Ringold, the Board's counsel. Dkt. # 57, at 2. The e-mail states, in relevant part:

> I believe by now you have heard rumblings about our situation here at Prue Public Schools and our new board members – I have been asked by Mr. Don Horton, Board Member, to contact you and seek legal advice, he is very concerned about propriety and future law suits as a result of the board actions – I will try to give you a brief overview through this e-mail . . . . The immediate concern is the reemployment of our HS and Elem Principals - They were both on last month agenda to be rehired, the new board president (X-supt, Ron Meadows) immediately asked for the agenda items to be tabled and that we were to take the 2 agenda items into executive session at the next board meeting . . . . The next day Valerie Traster (clerk

4

>of the board) called Ms. Ginger James the elem. prin. and told her "she did not have to worry, she was safe, we were not out to get her - that was not part of the plan." I have documented conversations across the community from Traster and Jackson (Vice pres.) relaying the same information.
>    The question?????? According to the meetings before the election and their conversations after the election, they clearly intend to vote out Debbie Tennison as HS prin. ----- What and how should I advise the board concerning this action?????? How do I explain bias??? How do you implement due process???? When do you determine bias?????? . . . During the last board meeting, Ron Meadow boe pres. made some very pointed and degrading remarks about our faculty, as supt. what can I do to stop him from making such statements????? . . . What are your thoughts and how should I advise the board?

Dkt. # 52-5, at 1 (as in original). Defendants argue that this e-mail is based on hearsay, "as Hulsey was asked to send the e-mail to Mr. Drummond by former Board member Don Horton based on information relayed to Hulsey by Horton." Dkt. # 57, at 2. Defendants also argue that the e-mail "is not relevant as it addresses issues (unrelated to those in this case) that occurred in the prior fiscal year and is from a Superintendent who is no longer employed by the District." Id. Plaintiffs argue that the e-mail is not hearsay because it is an admission by a party-opponent under Fed. R. Evid.801(d)(2). Dkt. # 59, at 2. She argues that Hulsey was the "School District's CEO" when he sent the e-mail. Id.

"[A]n employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was 'involved in the decisionmaking process affecting the employment action' at issue." Johnson v. Weld County, Colo., 594 F.3d 1202, 1209 (10th Cir. 2010) (quoting Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1301, 1314 (10th Cir. 2005)). Hulsey was not involved in any of the decisions associated with the termination of plaintiffs' employment. Hulsey was not superintendent at the time plaintiffs were terminated. Further, Hulsey did not send the e-mail to Drummond in his capacity as superintendent of the School District. He sent the e-mail on behalf of an individual Board member, who is not a defendant in this

case. The e-mail is not an admission by a party-opponent, and is inadmissible hearsay. See Fed. R. Evid. 802.

Defendant's motion is granted insofar as it relates to the February 21, 2008 e-mail from Hulsey to Drummond.

B.      E-mails from Hendrix to Meadows

On April 1, 2008, Hendrix sent an e-mail to Meadows titled "Friends to the end." Hendrix wrote, "I'm going to send you an e-mail of interest in filling the Board Seat. I didn't know if you need it so that everything looks on the up and up. If you know what I mean?" Dkt. # 52-7, at 1 (as in original).

On July 2, 2008, Hendrix forwarded to Meadows e-mails between herself and Phyllis Tarrant, asking Meadows "do you think we stepped in it?"[5] The e-mails discussed the recent employment of Cottrell as superintendent. Tarrant was very critical of Cottrell. Hendrix expressed surprise at Tarrant's opinion, and also wrote "[h]e couldn't screw up the activity fund or anything else around there worse than the two ladies doing it now. The school treasurer is Dawn Bunch, Brother Mikes [sic] daughter, I'm sure you remember those children, and Oleta's daughter Regina Allen. Need I say more?" Dkt. # 52-10, at 1.

On September 3, 2008, Hendrix sent Meadows an e-mail discussing Meadows's proposed resignation from the Board. Hendrix wrote, in relevant part:

> [Y]ou ran for the School Board because you wanted to right some very serious wrongs, especially to your family. Pat [Meadows's wife] was mistreated and run off. Randall [Meadows's son] was mistreated and run off. Bret [relation unknown] was

---

[5]     Tarrant would later become the interim superintendent of the School District. There is no evidence that Tarrant was officially affiliated with the School District in any manner in June or July 2008.

> mistreated and run off, so to speak. The school was in shambles and you still have a grandson going there. I know the reasons you submitted your resignation, but in all actuality, they have now run off the entire Meadows family. They have won! I know you and your family and none of your [sic] are quitters, especially you. What I want to know, for sure, is, if we accept your resignation, will you be able to live with yourself? After all has died down and you have had some time to heal. I know you are mad, and hurt and exasperated and fed-up, but that will pass and then, will you be glad you let them run you off two [sic]?

Dkt. # 52-13, at 1.

On December 8, 2008, Hendrix sent Meadows an e-mail. Hendrix wrote:

> I was talking to Valerie and she said that she and Chrissie and Violet were thinking that it might not be a good time right now to make any mover [sic] waves than necessary with the election around the corner. I think that might be a good idea. There is time enough before the end of the year to do that. What do you think? Valerie is going to call Eddie Boyer today and see what kind of a deal he will make me on some of the campaign things to put on the road.

Dkt. # 52-23, at 1.

Defendants argue that these e-mails are inadmissible pursuant to Fed. R. Evid. 602 because "[t]he plaintiffs have offered the [C]ourt nothing to show that they, or anyone else, have personal knowledge that the emails are referring to them." Dkt. # 57, at 3.

Rule 602 states that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The rule does not apply here. Nothing in the rule requires a plaintiff to have personal knowledge that another person's statement refers to her. Generally, it is for the finder of fact to determine whether it should be inferred that a statement refers to the plaintiff. Defendant's Rule 602 argument is without merit.

Plaintiffs offer the September 3, 2008 e-mail for the truth of the matter asserted therein: that Meadows ran for the School Board to right wrongs done to his family. Plaintiffs argue that this is evidence that Meadows was biased against them and retaliated against them for their involvement

in a grand jury petition to investigate the Board and a criminal investigation of Meadows's son. See, e.g., Dkt. # 59, at 3-4. Offered for this purpose, the e-mail is inadmissible hearsay. It is not an admission of a party-opponent under Fed. R. Evid. 801(d) because it is not an admission by Meadows and the statement was not made by Hendrix in her capacity as a Board member or other representative of the District. A statement by Hendrix cannot constitute an admission of Meadows's state of mind.

Defendants also argue that the e-mails are not admissible because they are not relevant. Neither the April 1 nor the July 2 e-mail refers to plaintiffs or refers to any matter relevant to plaintiffs' terminations. The Court finds no connection between Hendrix and Meadows's discussion of filling a board seat in April 2008 and plaintiffs' terminations in February 2009. Similarly, the Court finds no connection between Hendrix and Tarrant's discussion of Cottrell and two other District employees and plaintiffs' terminations. Neither e-mail is evidence of bias or retaliation towards plaintiffs or a conspiracy regarding their employment.

On the other hand, it could be inferred that the December 8, 2008 e-mail discusses the investigation into the District's financial condition that precipitated plaintiffs' terminations. The Court cannot determine at this time that the December 8, 2008 e-mail is necessarily irrelevant. The non-hearsay portion of the e-mail is Hendrix's statement that whatever is being discussed "might be a good idea." Such portion of the e-mail will be considered as part of the record on summary judgment.

Defendants' motion is granted insofar as it relates to the April 2. July 2, and September 3, 2008 e-mails. Defendants' motion is granted in part and denied in part insofar as it relates to the December 8, 2008 e-mail, as set forth herein.

8

C.   Tennison's Testimony as to Meadows's Statement to Cottrell

At her deposition, Tennison testified that Meadows told Cottrell "that if we'd back off his son, he'd be easier to get along with." Dkt. # 52-12, at 4. Defendants argue that this is inadmissible hearsay. Dkt. # 57, at 3. Plaintiffs argue that, when Cottrell relayed the statement to Tennison, he was the District superintendent and, thus, the statement is an admission by a party-opponent under Fed. R. Evid. 801(d). There is no evidence that Cottrell relayed this statement to Tennison in his capacity as superintendent or any other capacity as agent of the School District. In fact, there is no evidence of when Cottrell relayed this statement to Tennison. Further, Cottrell's statements are not attributable to the School District because he had no part in the decisions affecting plaintiffs' employment. See Part II.A, supra. Cottrell's statement is not an admission by a party-opponent. The evidence is inadmissible hearsay. Defendants' motion to strike is granted insofar as it relates to Tennison's testimony as to Meadows's statement to Cottrell.

D.   Bentley's Expert Reports

Plaintiffs offer Bentley's expert report and supplement as evidence in opposition to defendants' motion for summary judgment. Defendants argue that Bentley's reports should not be considered as part of the summary judgment record because the reports, standing alone, are hearsay. Plaintiffs do not respond to the hearsay argument, but asserts that they "have every right to introduce analysis from a school finance expert to combat [the District's] claims of lack of funds and a severe financial crisis." Dkt. # 59, at 4.

Bentley's reports are not sworn affidavits, and the factual representations made therein were not made under penalty of perjury. See Dkt. # 52-27. A significant portion of the content of Bentley's reports is Bentley's version of what occurred at the plaintiffs' termination hearing. E.g.,

Dkt. # 52-27, at 1 ("[a]t the hearing I was not allowed to present the evidence that I had collected which would prove the four school board members had discussed the termination of both Ginger James and Deborah Tennison prior to the due process hearing"). He also summarizes the report made by the District Treasurer, Douglas Jones. E.g., Dkt. # 52-27, at 8 ("[t]he 'Monthly Fund Balance History' as shown on Mr. Jones [sic] records reveals an $188,000 fund balance for the month of May of 09"). The transcript of the plaintiffs' hearing speaks for itself, as do the numbers in James's reports. Bentley's factual assertions are largely based on hearsay, and are unsworn. Defendants' motion to strike is granted insofar as it relates to the factual assertions contained in Bentley's expert reports.

Additional portions of Bentley's reports contain Bentley's opinions regarding the law and the ultimate factual issues to be determined in this case. For example, Bentley asserts that "the due process rights of both James and Tennison were violated as they were not allowed to present evidence which would show the real purpose behind the dismissal proceedings." Dkt. # 52-27, at 2. The Court does not find Bentley's assertions regarding what due process requires persuasive or helpful; the Court, not Bentley, will determine what due process requires in plaintiffs' cases. The motion to strike is granted insofar as the reports contain inadmissible hearsay in the factual assertions and insofar as they contain Bentley's personal opinions as to the law and the ultimate issues in this case. It is denied as to any remaining portions of the reports.

**IT IS THEREFORE ORDERED** that defendants' Motion to Strike Inadmissible Evidence and Improper Argument in Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. # 57) is **granted in part** and **denied in part**, as set forth herein.

**DATED** this 31st day of August, 2010.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE